## ARTHUR W. WINDETT

### *v.*

## THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *et al.*

*Filed at Ottawa October 31, 1889.*

1. CHANCERY—*decree in violation of agreement—as, taking a decree of foreclosure after an agreement to extend the time—remedy.* The holder of a mortgage exhibited his bill in chancery in the Circuit Court of the United States, for a foreclosure. Personal service was had on the mortgagor, his default entered, decree of foreclosure, and sale, the mortgagee being the purchaser. After the statutory time for redemption had expired, the master made a deed. Subsequently, the mortgagor exhibited his bill in chancery in the circuit court of Cook county, in this State, to redeem, alleging that the decree of foreclosure in the United States court was taken in violation of an agreement by the mortgagee to extend the time of payment of the mortgage debt, and to reduce the rate of interest: *Held,* that conceding the ground for relief

to have been established, the remedy of the mortgagor was by application in apt time to the court in which the suit for foreclosure was pending, where, upon a proper showing, appropriate action would be taken.

2. RES JUDICATA—*as to defense not made.* A final decree of the United States Circuit Court, finding the sum due and ordering a sale of mortgaged premises for the debt and costs, is conclusive of the fact that the mortgage debt was due and of the sum due, and the mortgagor can not be heard to allege, by bill seeking to redeem, that the decree of foreclosure was taken in violation of an agreement to give further time for payment and a reduced rate of interest. These being matters involved in the issues passed upon in the suit to foreclose, became *res judicata,* and not open to re-litigation.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. W. C. GOUDY, Mr. JOHN WOODBRIDGE, and Mr. WILLIAM P. BLACK, for the appellant.

Messrs. ISHAM, LINCOLN & BEALE, for the appellees

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Windett executed to the Connecticut Mutual Life Insurance Company the following mortgages: one for $30,000.00, dated April 16, 1873, due in five years, with interest at nine per cent per annum, on a lot on State Street in Chicago; one for $10,000.00, dated Nov. 14, 1873, due April 16, 1878, at 9 per cent interest, on same lot; one for $20,000.00, dated Nov. 18, 1875, payable in 5 years, with 8 per cent interest, on the north half of 40 acres in section 8, etc., in Cook Co.; one for $20,-000.00, dated Nov. 18, 1875, payable in 5 years, at 8 per cent interest, on the south half of said 40 acre tract; a second mortgage, dated Nov. 18, 1875, on said 40 acre tract, subject to the last two mortgages and given as additional security for the said mortgages on the State Street lot; a mortgage for $4500.00, dated June 18, 1866, due June 18, 1871, with interest at 8 per cent, on a lot on Milwaukee Ave. in Chicago;

a second mortgage on said Milwaukee Avenue lot, for $10,-000.00, dated April 16, 1875, due April 16, 1880, and drawing nine per cent interest.    The amount of these mortgages, $94,-500.00, represented money loaned by the Company to Windett.

Prior to March, 1879, the appellant, Windett, had neglected for several years to pay any interest upon this indebtedness, or any taxes upon the property mortgaged, and had suffered some of the property to be sold for taxes.    Accordingly the Insurance Company, one of the appellees herein, filed bills, in March, 1879, in the Circuit Court of the United States for the Northern District of Illinois, to foreclose said mortgages, some of them having become due by their terms, and others having been declared due for non-payment of interest and taxes in accordance with provisions therein contained.    Appellant was duly served with process in the foreclosure proceedings, both upon the filing of the original bills, and of the amended and supplemental bill hereinafter mentioned.    He was also present at the taking of testimony before the Master in the causes, and was duly informed of all the steps taken therein, but he filed no answers and made no defense, and failed to bring to the attention of the Federal Court the alleged agreements hereinafter mentioned.

The bill to foreclose the mortgages upon the Milwaukee Avenue property was filed March 17, 1879; default was taken and the cause referred to the master on Nov. 23, 1880; decree of sale was entered on June 22, 1881; sale was made by the master on September 23, 1881, and the property was bought by the Insurance Company, to which a master's deed was issued on January 29, 1883, the appellant having failed to redeem.

The bill to foreclose the mortgages upon the property on State Street and in section 8 was filed on March 15, 1879; an amended and supplemental bill was filed April 6, 1880; orders *pro confesso* and of reference were entered on November 23, 1880; decree of sale was entered on July 16, 1881; sale by the Master to the Insurance Company was made on

November 17, 1881, and master's deed in pursuance of the sale was executed on February 19, 1883, there having been no redemption.

After the filing of the bill filed on March 15, 1879, appellant, on June 27, 1879, executed a mortgage to the Company upon six inches of ground north of and adjoining the State Street lot, as additional security for the $40,000.00 loaned upon that lot, and because the north wall of the building erected by appellant upon said lot with the money borrowed by him rested upon said six inches. On July 28, 1879, appellant also executed to the Company a mortgage upon 40 acres of land in section 14, etc., known as the Parker tract, as further security for the indebtedness upon the State Street property. The Company paid off certain liens upon the 40 acres in section 14, amounting to $6000.00, and took from appellant another mortgage, dated March 16, 1880, upon said 40 acres to secure appellant's bond for $6000.00, payable on demand, and drawing 8 per cent interest. The object of filing the supplemental bill was to foreclose the mortgages upon the six inches and upon the Parker tract.

When the loans of $40,000.00 were made upon the State Street lot in 1873, there rested upon it an old mortgage, dated in 1857, for $20,000.00, owned by one Catherine Parpart, and which seems to have been regarded as invalid both by appellant and the Insurance Company. A bill to foreclose this Parpart mortgage was filed in the United States Circuit Court in 1875 against appellant and the Insurance Company; a decree was rendered on July 28, 1879, in favor of Parpart for the $20,000.00 and interest, and a receiver was appointed to take possession of the State Street lot and the building thereon; upon appeal to the Supreme Court of the United States, that Court sustained the Parpart decree; on July 14, 1883, there was due on this Parpart decree $46,158.82, of which the Insurance Company paid $34,937.62, and the remainder, $11,221.20, was paid out of rents accumulated in the hands of the receiver.

The decree, rendered against appellant in the foreclosure of the Milwaukee Avenue mortgages, was for $21,425.70, and the decree rendered in the suit to foreclose the other mortgages, was for $136,697.41.

In the present case, the appellant filed his bill in the Circuit Court of Cook County on June 17, 1885, for the purpose of redeeming the foregoing property from the foreclosure sales made under the decrees of the United States Circuit Court, and charging that the foreclosure proceedings in the Federal Court were consummated by the Insurance Company in violation of certain agreements with appellant, and that, by reason of such agreements, the Company holds its title to the property in question subject to the right of appellant to redeem the same. Answers were filed to the bill by the defendants thereto, the Insurance Company, Mark Skinner, Anson Sperry and Henry P. Isham. After hearing, the Circuit Court of Cook County dismissed the bill for want of equity, and its decree has been affirmed by the Appellate Court. The case is brought to this Court by appeal.

Appellant claims that, after the foreclosure bills were filed in the Federal Court, the Insurance Company agreed with him to extend the time for the payment of the monies secured by the mortgages, and to reduce the rate of interest required to be paid by the terms of the mortgages. The first question is as to the existence of the agreements contended for, and we do not think that the appellant has succeeded in proving any such agreements. We will advert to a few of the facts and circumstances upon this subject, which are found in the record.

On March 18, 1879, appellant wrote a letter to Skinner, the Chicago correspondent of the Insurance Company, in which he submits the following proposition : "Let the loans be renewed for, say, five years, at six per cent. per annum, and I will give as additional security 40 acres of land in * * * sec. 14, etc." On July 28, 1879, E. S. Isham, the attorney of the Company, requested appellant to execute, and appellant did then

40—130 Ill.

execute to the Company, the mortgage dated July 28, 1879, upon the 40 acres in Sec. 14. Appellant says that the acceptance of the mortgage on the Parker tract was the acceptance of the proposition submitted by him on March 18, 1879, and that the consideration for the giving of the mortgage was the renewal of the loans for five years at six per cent interest. The weight of the testimony is against him in regard to this matter.

E. S. Isham swears that the letter of March 18, 1879, and the mortgage of July 28, 1879, had no connection with each other; that the Federal Court on July 19, 1879, decided the Parpart mortgage to be valid and prior to the mortgages of the Insurance Company as a lien upon the State Street lot; that the notes secured by the Windett mortgages were judgment notes, and, owing to the impairment of the Company's securities by the Parpart decision, he prepared the papers to enter up judgments so as to get liens upon the property of appellant not embraced in the mortgages; that, in consideration of his refraining from so entering up judgments, appellant agreed to give and did give the mortgage on the Parker tract as additional security.

Judge Skinner swears, that he submitted appellant's proposition of March 18, 1879, to the officers of the Insurance Company at Hartford, Connecticut, by letter, and on March 20, 1879, received the following reply: "We can not consider any proposition for delay from Windett which does not include a satisfactory settlement of all arrears and protection against defaults in future;" that, while he can not remember the fact of communicating the contents of this dispatch to appellant, he has no doubt that he told him the purport of it, and that "Mr. Windett must have known it very soon afterwards some time, because he was always very careful about finding out." It is not shown, that, before July 28, 1879, any settlement was made of "all arrears," or any protection furnished against future defaults. That Skinner had no authority to act upon

the proposition of July 18, 1879, without submitting it to his principals at Hartford, was well known to the appellant, as the proofs abundantly show.

Again, on July 31, 1879, appellant wrote a letter to Isham & Lincoln, attorneys of the Insurance Company, in which he says, among other things: "I respectfully request, 1. a renewal of the loans for five years, 2. a reduction of the rate of interest on all my indebtedness to six per cent, which is all I can pay." If, as appellant claims in his bill and in his testimony, he had a binding agreement with this company, which was perfected and closed on July 28, 1879, by which it agreed to extend his loans five years and reduce his interest to six per cent, why did he write the letter of July 31, 1879? It is inconceivable, that a man should ask as a favor on July 31 that which he had already acquired by contract entered into on July 28.

On March 31, 1880, appellant wrote a letter to Greene, the President of the Company at Hartford, saying: "I have had some conversation with Judge Skinner * * * with a view to obtain an extension of time upon my loans * * * and to have the interest reduced to 6 per cent." On June 15, 1880, he writes to Greene: "Allow me to inquire whether the company has concluded to entertain favorably the proposals I laid before you * * * as per my letter of March 31st." On July 7, 1880, he writes to Isham & Lincoln: "I beg to submit the following basis of agreement respecting my loans * * * 1st. Let the several loans be extended for three years from the present time, 2nd, that interest on the same be reduced to five per cent per annum, taking effect Jan. 1, 1878," etc. These letters are inconsistent with the theory of a contract formed out of the proposal of March 18, 1879, and the mortgage of July 28, 1879.

But appellant sets up another contract for extension of time and reduction of interest alleged to have grown out of a proposition made in January, 1881, and accepted, as he claims, in April, 1881. The proof fails to establish any such contract.

On February 26, 1881, appellant handed to Judge Skinner a written memorandum or proposal, dated January 22, 1881, containing these words: "Basis of arrangement with Conn. Mut. L. I. Co. That all loans be extended to three years from July, 1880, and that the interest thereon be reduced to six per cent from Jan. 1, 1879." This memorandum also contained a proposition to subdivide the 40 acres in section 8 into blocks, lots, streets, etc., and to sell certain blocks and lots, the company to give releases, and so much to be paid upon the parts released. This proposition was forwarded by Skinner to the Company. Appellant states that Skinner met him on the street on April 15, 1881, and in answer to a question about the proposition of Jan. 22, 1881, said that the Company had agreed to the proposition. The proposition so submitted and the interview of 'April 15, 1881, are said to constitute the second contract.

Skinner contradicts appellant in the following words: "I could not have said any such thing at any time in reference to the proposition of January 22, 1881. * * * I never said anything only what the Company authorized me to say, and I never had any authority from the company to say any such thing." It appears that, through the influence of Skinner, the Company did release $2\frac{1}{2}$ acres to the appellant on July 27, 1881, but appellant raised money by mortgaging the part so released, and used the money for his own private purposes, making no payment out of it upon his indebtedness to the company.

Greene swears, that no arrangement whatever was entered into with the appellant upon the basis of the proposition of January 22, 1881, and that he charged the appellant, in an interview had with him on April 28, 1881, with scheming to inveigle the company into some statement that would look like a contract for extension.

After the decrees of sale were entered, appellant had an interview with Taylor, the Secretary of the company at Hartford, in the summer of 1881, in which he states that Taylor

told him no steps would be taken under said decrees. Taylor denies this *in toto* in his evidence. A letter, dated September 20, 1881, written by Taylor to appellant, in reply to a letter from appellant, dated September 14, 1881, is produced, in which Taylor says: "Replying to your favor of the 14th instant, I beg to say that you are under a misapprehension in attributing to me a promise that no steps should be taken upon the decrees in your matters, etc."

In reply to a letter, dated July 2, 1881, written to him by appellant, Judge Skinner writes to appellant on July 7, 1881, and, referring to appellant's statements about the memorandum of Jan. 22, 1881, he says: "If you mean to imply that any such arrangement was made with me for the company, or with the company in any wise, then you state what I do not understand to be the case. I do not know of any arrangement of any kind made by you with the company, or with me acting for the company."

The evidence in this case is very voluminous. We cannot further discuss it. We have only referred to a few items of it. We are satisfied, from an examination of it, that the agreements for extension of time and reduction of interest, as they are set up and insisted upon by the appellant, were never made by the Insurance Company. Appellant's statements upon this subject rest upon his own testimony exclusively, while over against them stands an overwhelming mass of evidence oral and documentary.

But let it be admitted that we are wrong in our construction of the evidence, and that there were really such agreements as are contended for. What then? Appellant should have applied for relief to the Federal Court in which the foreclosure proceedings were pending. He is an able and experienced lawyer. He says that he was surprised at the prosecution of the foreclosure suits by the company, and regarded the filing of the supplemental bill, the taking of the defaults, the entry of the decrees of sale and the sales thereunder, as being gross

violations, each and all of them, of his understanding with the company. If he had gone before the Federal Court when the defaults were taken, and produced evidence of an agreement to suspend the foreclosures and extend the time of payment, that court would undoubtedly have set aside the defaults and dismissed or stayed the proceedings. It would have delayed the sales even after the decrees were entered upon proof of such agreement.

At any rate, the Federal Court had jurisdiction of the person of the appellant by due service of process upon him, and also jurisdiction of the subject matter of the litigation before it. One of the questions involved in the issues presented to that Court was the right of the Company to foreclose its mortgages. If the Company had agreed to extend the payment of the mortgage indebtedness for five years, it was wrongfully proceeding to foreclose, and such agreement was proper matter of defense to be set up against the assertion of the right to foreclose. Another question involved in the issues before the Federal Court was the amount of indebtedness upon the mortgages. If there was an agreement that that indebtedness should draw only six per cent interest from a specified date, then it was wrong to enter decrees for interest at the rate of eight and nine per cent, and proof of such agreement could have been introduced by the defense, under the issues involved, to lessen the amount to be recovered.

Hence, it is manifest that the agreements, which we are now asked to enforce, involve not only matters over which the Federal Court had jurisdiction, but matters, which were embraced within the issues passed upon by that Court. It follows, that its decrees, unreversed by a direct proceeding, are final adjudications, so far as we are concerned, upon the subjects now urged upon our consideration. We have no power to review, change or annul those decrees.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*